**Darnell BURSE, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 1285S510.**

Supreme Court of Indiana.

Dec. 4, 1987.

Susan K. Carpenter, Public Defender, Vickie Yaser, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is an appeal from the denial of a petition for post-conviction relief. Pursuant to a plea agreement, appellant entered pleas of guilty to attempted robbery (class B felony), attempted robbery (class A felony), robbery, two counts of attempted murder and murder. In addition, he was required to testify against three individuals in various pending cases. In exchange, appellant received sentences of twenty years for the class B felony conviction and thirty years on all remaining counts, all sentences to be served concurrently. The post-conviction court determined that the robbery charge was used to support the felony murder conviction and therefore vacated the sentence for robbery.

These are the issues raised at the post-conviction hearing: (1) whether appellant received effective assistance of counsel; and (2) whether the guilty pleas were entered knowingly and voluntarily.

I

Appellant contends that his defense counsel provided ineffective assistance due to a conflict of interest and additionally due to several errors and omissions.

During his representation of appellant and prior to the completion of plea negotiations, defense counsel secured immunity from prosecution for certain members of appellant's family. At the post-conviction hearing, he testified that the State wished to talk with appellant's family concerning the location of the gun used in the murder with which appellant was charged. He stated he was concerned that members of the family might be peripherally involved so he negotiated immunity from prosecution in exchange for their cooperation. As a result of information provided by appellant's family, the murder weapon was recovered.

Appellant's assertion of ineffective assistance of counsel suggests that counsel's representation of his family negatively affected counsel's performance on his behalf. The murder weapon was located as a direct result of counsel's representation of appellant's family. The record before us is not detailed enough for us to determine the strength or weakness of the State's case without the murder weapon. We can only assume that possession of the weapon would be beneficial to the State. Had appellant gone to trial on the charges, the weapon could have been used against him and if his relatives testified, counsel might have been limited in his ability to cross-examine them on any areas he had knowledge of due to his representation of those family members. The cases did not go to trial but it is asserted that counsel's advice and recommendation to accept the plea agreement were influenced by his actions on behalf of appellant's family.

A combination of several United States Supreme Court cases determines the standard to be applied when ineffective assistance of counsel due to a conflict of interest is alleged in a guilty plea situation. In general, in order to prove ineffective assistance of counsel, a defendant must show two components: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. However, when a defendant opts to plead guilty rather than proceed to trial, the second component of the *Strickland* test is modified. A defendant, rather than needing to show prejudice, must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to

trial." *Hill v. Lockhart* (1985), 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203.

The Supreme Court has also spoken specifically on cases where conflict of interest is raised as the basis for an ineffectiveness claim. The applicable standard, when a defendant proceeds to trial, is a showing of an actual conflict of interest together with a showing that that conflict adversely affected counsel's performance. *Cuyler v. Sullivan* (1980), 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333.

When a guilty plea is involved, the *Cuyler* standard must be modified in much the same manner as the *Strickland* standard. Since the focus in reviewing a guilty plea is whether the plea was knowingly and voluntarily entered, it seems logical that a defendant who pleads guilty and is now asserting ineffectiveness of counsel due to a conflict of interest must establish: (1) that there was an actual conflict of interest; and (2) that that conflict of interest adversely affected the voluntary nature of the guilty plea.

■ Appellant has established that an actual conflict of interest existed. While counsel's motive in seeking to protect appellant's family from possible prosecution was undoubtedly commendable, his representation of those family members compromised his representation of appellant. The State obtained the murder weapon through appellant's relatives. In the event of trial, the murder weapon and the testimony of the relatives could be used against appellant and counsel would be somewhat constrained in his ability to cross-examine.

Since an actual conflict of interest has been established, it now becomes necessary to determine if that conflict of interest adversely affected the voluntary nature of the guilty plea. In other words, but for counsel's conflict of interest, would appellant not have pleaded guilty and insisted on going to trial instead?

■ In a post-conviction proceeding, a defendant must prove his claims by a preponderance of the evidence. He stands in the position of one appealing from a negative judgment and it is only where the evidence is without conflict and leads to but one conclusion that it will be deemed contrary to law. *Popplewell v. State* (1981), Ind., 428 N.E.2d 15.

■ At the hearing on appellant's petition for post-conviction relief, he testified that he believed his counsel had been ineffective because he didn't subpoena witnesses and because up until the guilty plea hearing he believed he was going to plead guilty in exchange for a twenty year sentence instead of a thirty year total sentence. At no time did appellant himself testify that his counsel's representation of other family members in any way affected his decision to plead guilty. His post-conviction attorney argued this position but presented no evidence in support of it.

While possession of the murder weapon by police would have impacted appellant's defense to some extent had he gone to trial, there has been no showing that it was a factor in his decision to plead guilty. Appellant confessed each crime to police and admitted his involvement to his attorney. He was facing a 280 year maximum sentence for these charges with the minimum he could receive being the thirty years he ended up with. The murder weapon's importance to the State's case seems minimal in the face of appellant's confession. We are not persuaded that appellant's decision to plead guilty would have been altered if his attorney had not had a conflict of interest.

Appellant also asserts he received ineffective assistance of counsel due to his attorney's failure to investigate appellant's alibi defense, misrepresentation of the plea negotiations, misadvice concerning the penalty range to which appellant was subject, and failure to file motions to dismiss against defective informations.

■ Counsel's decision to forego investigating appellant's alibi defense is a matter of trial tactics with which we will not interfere. In addition to appellant's confessions, he had also been identified at a lineup as the trigger man in one of the shootings. Given counsel's testimony that appellant confessed his involvement in the

crimes, the confession to police and the eye-witness identification, counsel's decision to forego exploration of the alibi defense is supportable.

▇ Apparently there was some discussion between defense counsel and the prosecution about a plea agreement for a total sentence of twenty years. Appellant now claims that he did not agree to accept a thirty year plea, and was unaware until the guilty plea hearing that that was the term he would be agreeing to accept. The record of the guilty plea hearing reveals an extensive examination by the trial judge concerning appellant's understanding of the terms of the agreement. He had ample opportunity to object to the terms of the agreement, yet he said nothing. Appellant has not satisfied us that he did not freely and voluntarily agree to a term of thirty years in exchange for his plea. The murder conviction carries a minimum term of thirty years, so appellant could not have received less time under this agreement.

▇ Defense counsel informed appellant that should he proceed to trial he was facing a maximum sentence of 380 years and a minimum sentence of 230 years plus a possible habitual offender charge. In reality, the maximum sentence was 280 years with the minimum being 30 years and appellant did not have the prerequisite two felony convictions to support an habitual offender count. While counsel was obviously confused on the terms of the consecutive sentencing and habitual criminal statutes, this confusion does not amount to ineffective assistance of counsel. Appellant received the minimum possible sentence through his plea agreement. The written plea agreement correctly stated the penalty ranges for the offenses to which appellant admitted his guilt. Likewise, the court covered this area in its advisements. Appellant has not proven that but for counsel's erroneous time computation, he would not have entered into the plea agreement.

▇ Finally on the allegation of ineffective assistance, appellant urges that the Informations charging him were defective and that his attorney erred by failing to move for their dismissal. The defects alleged are the absence of the word intentionally and the absence of appellant's name on one Information. The Informations could have been amended any time prior to trial so long as they did not affect the substantial rights of appellant. I.C. 35-34-1-5. The absence of the word intentionally will be discussed further in this opinion. The absence of appellant's name from the Information did not affect his substantial rights. He was aware that he was charged with the crime alleged in the Information. A motion to dismiss due to these defects would have been a meaningless formality. The State could immediately amend the Informations. The allegation of ineffective assistance of counsel has not been established.

## II

Under Cause No. CR82–114D, the State charged appellant with "knowingly" attempting to commit robbery, by "knowingly" attempting to take property from Lee Milburn. Count II of the same Information charged appellant with "knowingly" attempting to kill Lee Milburn. The two-count Information filed under Cause No. CR82–120D accused appellant of "knowingly" attempting to rob, causing serious bodily injury, and "knowingly" attempting to kill Eugene Meek. Appellant contends that the failure to use the word "intentionally" in the Informations or at the guilty plea hearing invalidated his guilty pleas as he was unaware he was admitting having the specific intent to commit these crimes.

▇ In CR82–114D appellant was the triggerman. Robbery is defined as knowingly or intentionally taking property from another by the use or threat of force. Murder is defined as knowingly or intentionally killing another. Specific intent is an element required to support an attempt conviction and must be alleged and proven.

▇ At the guilty plea hearing, the prosecutor read the probable cause affidavits. The pertinent parts are as follows:

"[Appellant] did essentially complete the story on this robbery in that he and Duncan Bridgeforth were going to rob Mr.

Milburn and that ... [appellant] ... was the one that approached him on that date and that when he saw Mr. Milburn's gun, ... [appellant] ... said that he got frightened and shot at him."

"Mr. Burse [appellant], did you hear the evidence that the State has submitted?"

"Yes."

"And do you agree that's what happened?"

"Yes."

Appellant admitted he and Bridgeforth "were going to rob Mr. Milburn." This statement is a sufficient admission of the specific intent to rob. Appellant admitted he became frightened and shot at Mr. Milburn. Intent can be shown by the use of a deadly weapon in a manner likely to cause serious injury or death. The admission of the armed approach and shooting at the victim is sufficient to show specific intent to kill.

In CR82–120D, appellant was the getaway driver. It was necessary to show that he had the specific intent to commit robbery. The attempted murder charge arose out of the felony murder statute which requires a killing in the course of a robbery or various other crimes.

The probable cause affidavit read at the guilty plea hearing contained the following:

"[Appellant] told Det. Frank Wilson that on May 13, 1982 ... [they] ... discussed robbing Mr. Meek."

█ Also included was a statement by a co-defendant that appellant told him that he and Charles Kennell had attempted to rob a man at that location and that when the man resisted, he was shot. Further, the affidavit related that "[appellant] and Mr. Kennell ... had spent two or three days checking out the Wake–Up station ... in order to determine the time when the deposits were made and place and at what location." This information was sufficient to assure appellant had the specific intent to rob Mr. Meek.

· █ As to the attempted murder charge, since it arose out of the felony (robbery), it was not necessary to show

specific intent to kill. Rather, intent to rob was sufficient. The following occurred at the guilty plea hearing:

"And Mr. Sullivan explained to you in the State of Indiana even though you were not the one who pulled the trigger, that you are charged equally with Charles Kennell because you were present and knew what was going on? You understand that?"

"Yes."

Clearly appellant admitted his intent to commit these crimes. In addition, this Court has held that the intentional element is covered by the language "by knowingly". *Smith v. State* (1984), Ind., 465 N.E. 2d 702. *Johnson v. State* (1983), Ind., 455 N.E.2d 932.

Appellant uses the same rationale to assert there was an insufficient factual basis presented for the convictions. Since we have determined that appellant acknowledged he had the specific intent to commit the crimes, and the factual bases contained this admission, there is no foundation for this assertion.

The post-conviction court is affirmed.

SHEPARD, C.J., and GIVAN, PIVARNIK and DICKSON, JJ., concur.