Victor **CARRINGTON**, Appellant–Petitioner,

v.

**STATE of Indiana, Appellee–Respondent.**

No. 45A03–9602–PC–51.

Court of Appeals of Indiana.

April 21, 1997.

Transfer Denied June 25, 1997.

Susan K. Carpenter, Public Defender, Linda G. Nicholson, Deputy Public Defender, Indianapolis, for Appellant–Petitioner.

Pamela Carter, Attorney General, Lisa M. Paunicka, Deputy Attorney General, Indianapolis, for Appellee–Respondent.

## OPINION

HOFFMAN, Judge.

Appellant-petitioner Victor Carrington, along with co-defendant Dominick Wardlaw, were convicted by a jury of two counts of rape and two counts of robbery.[1] Carrington now brings this appeal from the denial of post-conviction relief following his conviction.

The facts as found by our supreme court in *Wardlaw v. State*, 483 N.E.2d 454 (Ind.1985) are as follows:

> At 3:00 p.m. on February 25, 1982, the second victim stopped at a pharmacy on her way home. As she started to get into her car, Wardlaw came up from behind the victim and pushed her into the car. Armed with a twelve-inch butcher knife, Wardlaw held the knife near her face and told her to shut up or he would kill her. She struggled with Wardlaw but he overpowered her, pushed her onto the front seat of her car, and unlocked the front passenger door to let Carrington into her car.
>
> After driving around for a while, Wardlaw stopped the car and threw this victim onto the back seat. Wardlaw tore her clothes off and raped her. He continually beat this victim while he raped her.
>
> After Wardlaw raped her, the appellants drove around again, parked the car, and then Carrington raped this victim. Carrington then left the car and Wardlaw raped her a second time, and took her wedding band. After Carrington returned to the car, the appellants drove to an alley and pushed the victim out of her car.
>
> The first victim was raped by appellants at 3:00 p.m. on January 20, 1982. After completing business at a bank, this victim proceeded to go to her car. While she was closing her car door, one appellant pushed the door open, held a knife to her neck, and told her, 'Be quiet, Bitch, or you're dead.' He pushed her toward the middle of the front seat and unlocked the front passenger door to let the second appellant into the car.
>
> After driving for a while the appellants took her money and some jewelry. Appellants told her to undress. After she was naked, appellants ordered her to climb over onto the back seat. While one appellant raped her the second appellant held her right leg over the front seat and inserted his finger in her rectum. After the first appellant raped her, they changed places and then the second appellant also raped her. Appellants then drove to an alley and told this victim to get out of the car.
>
> Prior to trial, the second victim positively identified Carrington from a lineup and Wardlaw from a photographic array. Both victims identified each appellant in court.

*Id.* at 455.

Based on the above, both Carrington and Wardlaw were charged with two counts of rape and two counts of robbery. In November 1982, the defendants were tried together by jury trial and were found guilty of rape and robbery. Both Carrington and Wardlaw's convictions were affirmed in *Wardlaw v. State*, 483 N.E.2d 454 (Ind.1985).

In October 1988, Carrington filed a *pro se* post-conviction relief petition. Five years later, in November 1993, Carrington, by counsel, filed his Amended Petition for Post–Conviction Relief. In his petition, Carrington alleged that the State failed to redact references to Carrington found in the confession of his non-testifying co-defendant before submitting it into evidence; that Carrington's convictions and sentences for rape and robbery violated double jeopardy; and that both his trial and appellate counsel were ineffective. The trial court held an evidentiary hearing. Thereafter, the trial court issued Findings of Fact and Conclusions of Law denying Carrington's petition. This appeal ensued.

Carrington raises the same three issues for review that he raised in his post-conviction petition:

---

1. Both Carrington and Wardlaw were convicted of two counts of rape, as Class A felonies, and one count of robbery, a Class A felony. Carrington was convicted of an additional Class A robbery count while Wardlaw's second robbery conviction was a Class B felony.

(1) whether the trial court erred by admitting Wardlaw's confession without redacting references to Carrington;

(2) whether Carrington's convictions and sentences for rape and robbery violated the prohibition against double jeopardy; and

(3) whether Carrington was denied effective assistance of counsel.

■ Under the rules of post-conviction relief, the petitioner must establish the grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5); *Madden v. State,* 656 N.E.2d 524, 525 (Ind.Ct.App.1995), *trans. denied.* In reviewing the judgment of a post-conviction court, appellate courts consider only the evidence and reasonable inferences supporting the post-conviction court's judgment. *Weatherford v. State,* 619 N.E.2d 915, 916 (Ind.1993). To succeed on appeal from the denial of relief, the post-conviction petitioner must show that the evidence is without conflict and leads only to a conclusion opposite that of the post-conviction court. *Madden,* 656 N.E.2d at 525–526.

■ The purpose of post-conviction relief is not to provide a substitute for direct appeal, but to provide a means for raising issues not known or available to the defendant at the time of the original appeal. *Id.* at 526. If an issue was available on direct appeal but not litigated, it is waived. *Id.* An exception to the doctrine of waiver arises when errors are so blatant and serious that to ignore them would constitute a denial of fundamental due process, i.e., fundamental error. *Id.* The fundamental error doctrine permits a reviewing court to consider the merits of an improperly raised error if the reviewing court finds that the error was so prejudicial to the rights of the appellant that he could not have had a fair trial. *Id.*

■ Carrington first contends that his constitutional rights to confrontation and cross-examination were violated when the trial court admitted Wardlaw's confession into evidence without redacting references to Carrington. In short, Carrington argues that because Wardlaw did not testify, Carrington was denied his right to confront Wardlaw.

After Carrington and Wardlaw were arrested, each gave statements to the police indicating their involvement in the rape and robbery incidents. Neither defendant testified at the joint trial, and their oral confessions, found by the trial court to have been freely and voluntarily given, were admitted into evidence through police officers' testimony. Before submitting the statements, however, redactions were made which eliminated from the statements any reference to the attack on the first victim. None of the references to Carrington were redacted from Wardlaw's statement, and none of the references to Wardlaw were redacted from Carrington's statement.

■ It is well settled that a defendant may be denied his constitutional right of confrontation if, in a joint trial, the State introduces the extra-judicial admissions of a non-testifying co-defendant which implicate the defendant. *Townsend v. State,* 533 N.E.2d 1215, 1224 (Ind.1989). Because the defendant cannot call the co-defendant to the stand for cross-examination, a *Bruton* problem arises (*Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968)), and either a separate trial should be ordered or the co-defendant's admissions should be redacted to eliminate any references to the defendant. *Id.* (citing *Richardson v. Marsh,* 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987)).

In 1979, *Parker v. Randolph,* 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979), carved out an exception to the *Bruton* rule and allowed use of the non-testifying codefendant's extra-judicial confession implicating the defendant, if (a) the defendant has also confessed and his confession sufficiently "interlocks" with that of the co-defendant and (b) the jury is given cautionary instructions that a particular statement may be considered as evidence only as to its maker. *Townsend,* 533 N.E.2d at 1224.

*Parker* was overruled, however, in *Cruz v. New York,* 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987). The *Cruz* majority, in rejecting the "interlocking confession" doctrine, held that "where a nontestifying co-defendant's confession incriminating the de-

fendant is not directly admissible against the defendant, the Confrontation Clause bars its admission at their joint trial, even if the jury is instructed not to consider it against the defendant, and even if the defendant's own confession is admitted against him." *Id.* at 193, 107 S.Ct. at 1719, 95 L.Ed.2d at 172 (Citation omitted.). However, the *Cruz* majority further stated that "the defendant's confession may be considered at trial in assessing whether his co-defendant's statements are supported by sufficient 'indicia of reliability' to be directly admissible against him (assuming the 'unavailability' of the co-defendant) despite the lack of opportunity for cross-examination, and may be considered on appeal in assessing whether any Confrontation Clause violation was harmless." *Id.* at 193–94, 107 S.Ct. at 1719, 95 L.Ed.2d at 172 (Citations omitted.).

■ Indiana cases have consistently held that it is harmless error to admit a co-defendant's confession where the defendant's own confession has been admitted and does not differ substantially from that of his confederate. *Zachary v. State,* 469 N.E.2d 744, 748 (Ind.1984). This conclusion is further strengthened when there exists corroborating testimony and evidence of an appellant's guilt in addition to the similar confessions. *Townsend,* 533 N.E.2d at 1225.

Here, the evidence discloses that both Carrington and Wardlaw's confessions were substantially the same. There is nothing in either one that would tend to incriminate the other any more than his own confession. All of the details of the incident described in the confessions were fully corroborated by the victims. Both victims identified each appellant in court. Thus, the admission of Wardlaw's confession containing references to Carrington presents no reversible error.

■ Carrington next argues that his convictions and sentences for rape, as a Class A felony (as opposed to a Class B felony), and for robbery as a Class B felony (as opposed to a Class C felony), violated the prohibition against double jeopardy. According to Carrington, it was impermissible to enhance both offenses based on his use of a knife while committing both crimes. Although this issue was not raised upon direct

appeal, it is not waived because if shown, a sentencing error denying due process constitutes fundamental error. *Brown v. State,* 633 N.E.2d 322, 324 (Ind.Ct.App.1994), *trans. denied.*

Rape is a Class A felony if it is committed while armed with a deadly weapon, or if it results in serious bodily injury to any person other than a defendant. IND. CODE § 35–42–4–1 (1981 Cum.Supp.). Carrington was charged with having sexual intercourse with the victims by using force and while armed with a deadly weapon, to wit: a knife. Robbery is a Class B felony if it is committed while armed with a deadly weapon or results in serious bodily injury to another person. IND. CODE § 35–42–5–1 (1981 Cum.Supp.). Carrington was charged with taking property from the victims by force while armed with a deadly weapon.

In support of his argument, Carrington cites *Bevill v. State,* 472 N.E.2d 1247 (Ind. 1985). In *Bevill,* the stabbing of the victim was used to convict the defendant of attempted murder and to aggravate the burglary to a Class A felony. Our supreme court reversed, noting that "[t]here was only one quick and confined multiple stabbing." *Id.* at 1254. Thus, because Bevill could not be punished twice for one instance of bodily injury, our supreme court held that Bevill's convictions and sentences for both Class A burglary and attempted murder could not stand. *Id.*

· This Court, however, has declined to extend *Bevill* to cases elevating offenses committed while armed. *See Barker v. State,* 622 N.E.2d 1336, 1338 (Ind.Ct.App.1993), *trans. denied* (rape, criminal deviate conduct, and robbery, all elevated because armed); *Smith v. State,* 611 N.E.2d 144 (Ind.Ct.App. 1993), *trans. denied* (Class A felony rape and Class B felony confinement both elevated for use of a knife); *White v. State,* 544 N.E.2d 569 (Ind.Ct.App.1989), *trans. denied* (confinement, rape, and criminal deviate conduct, all elevated because armed). These cases are distinguishable from *Bevill* because the threat of harm, which caused the elevation of the felonies, was distinct during the commission of separate offenses; whereas in *Bevill,*

the elevation of offenses was based upon one instance of bodily injury. *Smith,* 611 N.E.2d at 148; *White,* 544 N.E.2d at 570–71; *but see Lyles v. State,* 576 N.E.2d 1344 (Ind.Ct.App. 1991), *trans. denied,* abrogated by *Peterson v. State,* 650 N.E.2d 339, 340 (Ind.Ct.App. 1995), declined to follow by *Lingler v. State,* 635 N.E.2d 1102, 1105 (Ind.Ct.App.1994), called into doubt by *Madden v. State,* 656 N.E.2d 524, 527 (Ind.Ct.App.1995).

Here, as in *Smith* and *White,* the use of a weapon occurred during the commission of separate and distinct crimes. Therefore, following *Smith* and *White,* we do not find that Carrington was placed in double jeopardy because he committed two separate crimes while armed with his knife.

Carrington next alleges that both his trial counsel and his appellate counsel were ineffective for failing to object to the references made to Carrington in Wardlaw's statement and for failing to object to Carrington's convictions for rape and robbery on the basis of double jeopardy. He raises these issues for the first time in his post-conviction relief petition.

■ As a general rule, ineffective assistance of trial counsel is an issue known and available at the time of direct appeal. *Wine v. State,* 637 N.E.2d 1369, 1378 (Ind.Ct.App. 1994), *trans. denied.* However, because Carrington raised ineffective assistance of appellate counsel for failure to raise ineffective assistance of trial counsel on direct appeal in his post-conviction petition, the ineffective assistance of counsel issues have been preserved. *See id.*

In a post-conviction relief hearing concerning competency of counsel, the petitioner has the burden of proving that counsel's representation fell below a standard of reasonableness established by prevailing professional norms. *Drake v. State,* 563 N.E.2d 1286, 1288 (Ind.1990). He must also prove that counsel's failure was so prejudicial as to deprive him of a fair trial. *Id.* It shall be strongly presumed that counsel assisted the defendant adequately and exercised reasonable professional judgment in making all significant decisions. *Spranger v. State,* 650 N.E.2d 1117, 1121 (Ind.1995). Inexperience or isolated instances of poor tactics or strategy do not necessarily amount to ineffectiveness of counsel. *Id.* A court denies a defendant a fair trial when the conviction or sentence results from a breakdown in the adversarial process which renders the result unreliable. *Barany v. State,* 658 N.E.2d 60, 66 (Ind.1995).

Here, we have already determined that Carrington has failed to demonstrate any prejudice resulting from the admission of Wardlaw's statement containing references to Carrington. We have also determined that double jeopardy principles were not violated and that Carrington's convictions for rape and robbery stand. Because Carrington cannot establish prejudice, his claim of ineffective assistance of trial counsel must fail.

■ Carrington also maintains that his appellate counsel was ineffective because, like trial counsel, he failed to raise the issues ultimately raised in Carrington's petition for post-conviction relief. Appellate review of the effectiveness of appellate counsel's representation uses the same standard as is applied to trial counsel. *Kappos v. State,* 577 N.E.2d 974, 978 (Ind.Ct.App.1991), *trans. denied.* Having found no reversible errors as to the issues raised, appellate counsel was not ineffective.

Affirmed.

GARRARD and BAKER, JJ., concur.